HATCHARD, Plaintiff in error, vs. THE STATE, Defendant in error.

*March 4 — March 17, 1891.*

*Abortion: Information: Evidence and instructions.*

1. An information which first charges that the defendants did, on four several days named, make a felonious assault upon M. B., a pregnant woman, and then proceeds, "and did then and there" wilfully and feloniously employ upon her body and womb a sharp instrument, etc., and did then and there wilfully and feloniously administer to her " medicines with intent feloniously to destroy the child, the same not being necessary, nor advised by two physicians to be necessary to preserve the life of the mother, " by means whereof " they did, on the last day named, "feloniously kill and slay the said M. B.," charges every fact essential to constitute the crime aimed at by sec. 4352, R. S., and is sufficiently certain to enable the court to pronounce judgment on a general verdict of " guilty in manner and form as charged in the information." The allegation of assault was unnecessary and may be rejected as surplusage.

2. It is no defense to an indictment under that section, that one of the defendants, who was a physician, thought the operation to be necessary to save the life of the mother, if the evidence shows that it was in fact unnecessary for that purpose.

3. Evidence showing that the defendant operated with a knife upon the womb of a healthy woman, nineteen years of age, and a few days afterwards she was delivered of a partly grown child, and was immediately attacked with peritonitis, of which she died, raises an irresistible inference that it was not necessary to destroy the child in order to preserve the life of the mother.

4. The exception of the statute was intended to apply only to a case where the death of the mother might reasonably be anticipated to result from natural causes unless the child is destroyed; and the fact that the woman had threatened to commit suicide unless relieved from her child does not show such a necessity.

5. Upon the trial of a wife, charged jointly with her husband with having produced an abortion, evidence is admissible that she, in the absence of her husband, offered to produce the abortion for the deceased, and stated that she had helped other women out of similar' trouble, as tending to show that she acted without any coercion by her husband.

Hatchard vs. The State.

6. Though a preponderance of evidence that the defendants had the advice of two physicians that it was necessary to destroy the child in order to save the life of the mother would have been sufficient, yet an error in charging that, if the guilt of the defendant was in other respects proved, the jury must convict her, unless satisfied from the evidence "beyond a reasonable doubt" that they had such advice, became immaterial, where no testimony was offered by defendant to prove that fact; it being one peculiarly within her knowledge and which the law devolved upon her to prove.

ERROR to the Municipal Court of *Milwaukee* County.

An information was duly filed in the municipal court of Milwaukee against the plaintiff in error and her husband, in which it is charged that on November 20, and December 1 and 11, 1887, at the county of Milwaukee, "the said defendants, Thomas Hatchard and *Nancy Josephine Hatchard*, did wilfully and feloniously make an assault in and upon a woman, Minnie Beardsley, she, the said Minnie Beardsley, being then and there pregnant with a child; and that the said Thomas Hatchard and *Josephine Hatchard* did then and there wilfully and feloniously employ upon the body and womb of the said Minnie Beardsley a certain sharp instrument or instruments to this informant unknown, and did then and there wilfully administer to the said Minnie Beardsley certain medicines and drugs to this informant unknown, with intent thereby then and there wilfully and feloniously to destroy such child, the same not being necessary to preserve the life of such mother, the said Minnie Beardsley, and not having been advised by two physicians to be necessary for the purpose of preserving the life of such mother, the said Minnie Beardsley; by means whereof the death of the said Minnie Beardsley was produced, and whereby the said Thomas Hatchard and *Nancy Josephine Hatchard* did on the 12th day of December, in the year one thousand eight hundred and eighty-seven, at the said county of Milwaukee, feloniously kill and slay the said Minnie Beardsley." Then follows an averment that *Mrs. Hatch-*

*ard* did not then and there act by and under the coercion of her husband.

On this information *Mrs. Hatchard* was separately tried, and convicted of the offense charged in the information. Motions in arrest of judgment and for a new trial were denied, and she was sentenced to imprisonment in the state prison for the term of four years. The testimony and rulings of the court on the trial are sufficiently stated in the following opinion. She has sued out a writ of error to obtain a review and reversal of the judgment.

*V. W. Seely*, for the plaintiff in error, contended that the information improperly joined three distinct offenses, viz.: one felonious assault, committed on four days named; the using of means to produce abortion; and manslaughter in the first degree; these being set out in substantially separate [counts, not sufficient in themselves to charge the offense indicated; and the conviction should be set aside. *People v. Aiken*, 66 Mich. 460; *People v. Olmsted*, 30 id. 431; *People v. Arnold*, 46 id. 268; *State v. Lyon*, 17 Wis. 237; 1 Bishop, Crim. Proc. secs. 429, 431. If the information is treated as single, it is bad for duplicity. The wife is to be presumed to have acted under coercion of her husband in whatever she did in his presence. *Rex v. Price*, 8 Car. & P. 19; *Davis v. State*, 15 Ohio, 72; *State v. Nelson*, 29 Me. 329; *Comm. v. Munsey*, 112 Mass. 287; *Comm. v. Neal*, 10 id. 152; *State v. Fitzgerald*, 49 Iowa, 260. It was for the state to prove the negative as to the exception of the statute, that the defendant had not obtained the advice of two physicians, etc. *Jensen v. State*, 60 Wis. 577; *State v. Kane*, 63 id. 260; *People v. Pendleton*, 79 Mich. 317; *State v. Meek*, 70 Mo. 355; *State v. Clements*, 15 Oreg. 237.

The *Attorney General*, for the defendant in error.

LYON, J. The exceptions deemed material to a determination of the case will be considered and determined in their order.

I. On the trial, counsel for *Mrs. Hatchard* objected to the admission of any testimony, for the alleged reasons that the information states no offense, and is void for uncertainty and duplicity. The objection was overruled.

The information is drawn under sec. 4352, R. S., which reads as follows: "Any person who shall administer to any woman pregnant with a child any medicine, drug, or substance whatever, or shall use or employ any instrument or other means, with intent thereby to destroy such child, unless the same shall have been necessary to preserve the life of such mother, or shall have been advised by two physicians to be necessary for such purpose, shall, in case the death of such child or of such mother be thereby produced, be deemed guilty of manslaughter in the second degree."

We think the information charges an offense under that statute. It avers every fact essential to constitute the crime against which the statute is aimed, substantially in the language of the statute, and with such degree of certainty that the court has no difficulty in pronouncing judgment upon the conviction of Mrs. Hatchard according to the right of the case. This is sufficient. R. S. secs. 4658, 4669. Much of the argument of counsel against the sufficiency of the complaint is based upon the claim that the information charges three distinct offenses in three counts, to wit: (1) Assault; (2) causing an abortion; and (3) manslaughter in the first degree. This, we think, is an entire misapprehension of the character of the information. It charges Dr. Hatchard and his wife with the felonious killing of Minnie Beardsley by the means therein stated; and the statute makes such killing manslaughter in the second degree. Hence the information charges that the accused committed that degree of felonious homicide. The charge of assault can only signify that the means employed to destroy the unborn child was a felonious assault. It is an

unnecessary averment, incapable of benefit to the prosecution or mischief to the accused, and, under a familiar rule, may be rejected as surplusage without impairing the sufficiency of the information. This information is modeled after that in *State v. Dickinson*, 41 Wis. 299, which passed the scrutiny of able couusel and of this court without challenge. The two informations are substantially alike. We hold the information in the present case sufficiently charges an offense under sec. 4352, and the trial court properly overruled the objection · to the admission of testimony under it.

II. The testimony tended to prove that Minnie Beardsley, who was then with child, applied to Dr. Hatchard to procure an abortion upon her; that he administered medicine to her, and operated upon her womb three times with a long sharp instrument for that purpose; that she was then a healthy woman, nineteen years of age; that *Mrs. Hatchard* had previously offered to perform the operation, and voluntarily assisted her husband in doing so each time; that a few days after the last operation Minnie was delivered of a partly grown female child; that she was immediately attacked with inflammation of the bowels, or peritonitis, and died thereof the day next succeeding her delivery; and that her disease was caused by such operations upon her person. The irresistible inference from the testimony is that it was not necessary to destroy the child to preserve the life of the mother. There is no testimony tending to show that *Mrs. Hatchard* or her husband was advised by two physicians, or by any person, that it was necessary to destroy the child for such purpose. Thus the testimony tended to prove, and was sufficient to justify the jury in finding that it did prove, every fact essential to constitute the crime charged in the information.

III. The court instructed the jury as follows: " If the defendant Thomas Hatchard obtained the advice of two

physicians that it was necessary to perform the operations upon Minnie Beardsley in order to save the life of the girl, then it matters not what the defendant *Nancy Josephine Hatchard* thought or did,— she is not guilty; and the evidence in this case, must satisfy you, and each of you, beyond a reasonable doubt that the said Thomas Hatchard did not have or obtain the advice of two physicians to perform the operations for the purpose of saving the life of the girl; and if it does not so satisfy you, you must acquit the defendant." The court refused further to instruct the jury, as requested on behalf of *Mrs. Hatchard*, that if Dr· Hatchard (himself being a physician) thought it necessary to perform the operation to save the life of the girl, the same results would follow. The proposed instruction was properly refused. In the first place, there is no testimony tending to show that Dr. Hatchard thought anything of the kind. Moreover, if a person commit an abortion upon a pregnant woman without the advice of two physicians that it is necessary to do so to save the life of the mother, he acts at his peril of the fact. Although he may have believed that such necessity existed, yet if in fact it did not exist he is not exonerated. This is the plain reading of the statute.

In this connection an item of proof may be mentioned. Minnie had threatened to commit suicide unless she could be relieved of the child with which she was pregnant, and this threat was communicated by her mother to Dr. Hatchard before he operated upon her. It seems to be claimed that this was evidence of the necessity for destroying the child to save Minnie's life. It is very manifest that the statute was not intended to apply to such a case, but only to a case where the death of the mother can reasonably be anticipated to result from natural causes unless the child is destroyed.

IV. An instruction was given, to the effect that if the

guilt of *Mrs. Hatchard* in other respects was proved, the jury must convict her, unless satisfied from the evidence beyond a reasonable doubt that Dr. Hatchard did have or obtain the advice of two physicians that it was necessary to destroy the child in order to save the life of the mother. If there was a preponderance of evidence showing he was so advised, obviously the testimony could not possibly prove beyond a reasonable doubt that he was not so advised; hence it was error to require proof of this defensive fact which should satisfy the jury beyond a reasonable doubt that it existed. But for a reason which will now be stated such error is immaterial. The burden of proving such advice is upon the accused. The fact, if it exists, is peculiarly within her knowledge, and may readily be proved by her, while it is practically impossible for the state to prove its non-existence. The law never requires impossibilities.

There being no testimony upon the subject, the presumption is conclusive that neither *Mrs. Hatchard* nor her husband had any such advice. The court might properly have so instructed the jury. It necessarily follows that the error in what the court said to the jury on the subject could not have harmed *Mrs. Hatchard*, and hence is not cause for reversal.

V. An instruction was proposed in behalf of *Mrs. Hatchard* to the effect that proof of certain conversation between her, Minnie, and her mother, at the house of Dr. Hatchard (but in his absence) was only admissible to show the purpose for which Minnie and her mother went there. The court refused to give the instruction. In that conversation *Mrs. Hatchard* offered to produce the abortion, and said she had helped hundreds of girls and women out of just such trouble. This was strong evidence that *Mrs. Hatchard* was acting voluntarily, and without coercion by her husband, and the conversation was admissible to prove that fact, as well as to prove the purpose for which Minnie went

there.    The court properly refused to give the proposed instruction.

VI. There is no testimony in the case tending to show that *Mrs. Hatchard* was coerced by her husband to aid him in destroying the child, while there is much testimony tending to prove (if it does not conclusively prove) that she acted voluntarily in the matter.    These facts dispose of the criticisms upon the charge of the court on that subject.    It is not perceived how the jury could, upon the testimony, have found otherwise than that she acted voluntarily, and without coercion.    We find no reversible error in this portion of the case.

VII. A single medical witness was examined as an expert, and an hypothetical question put to him, to which counsel for *Mrs. Hatchard* takes exception.    The witness was allowed to answer such question, and did so cautiously and intelligently.    We have examined the question in connection with the testimony, and think it fairly embodies the material facts testified to by the witnesses bearing upon the cause of Minnie's death.    We must hold that the question was properly framed, both in substance and form, and it was not error to allow the medical witness to answer it.

VIII. Other errors were alleged and argued, but it is believed the above views dispose of all the material errors assigned for reversal.    We think the proofs sustain the verdict of the jury, and we fail to find in the record that any material error intervened on the trial.    The judgment of the municipal court must, therefore, be affirmed.

*By the Court.*— Judgment affirmed.