[No. 39760.    Department Two.    July 25, 1968.]

THE STATE OF WASHINGTON, *Respondent*, v. DAVIE F. WILSON, *Appellant*.*

*Koenigsberg, Brown & Sinsheimer, W. John Sinsheimer,* and *Ronald J. Meltzer,* for appellant.

*Charles O. Carroll* and *Robert G. Maslan,* for respondent.

DONWORTH, J.†—Appellant and one Hedges were charged with the crime of burglary in the second degree committed as follows:

They, the said DAVIE FRANKLIN WILSON and ALBERT DOUGLAS HEDGES, and each of them, in the County of King, State of Washington, on or about the 23rd day of January, 1967, with intent to commit a crime therein, willfully, unlawfully, and feloniously did break and enter a building, said building not owned nor lawfully occupied by said defendants, known as Harmony Apparel Shop, situated at #3 Boston Street, in the City of Seattle, said county and state, the same being a building wherein property was then and there kept for sale, use and or deposit;  . . . .

After having pleaded not guilty, appellant was tried alone on the foregoing information. The jury returned a verdict of guilty and appellant was sentenced to imprisonment in

*Reported in 444 P.2d 141.

†Judge Donworth is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

a state penal institution for a maximum term of 15 years. He has appealed to this court.

In the trial court appellant was represented by counsel other than the attorneys who are representing him on this appeal. Appellant's sole assignment of error is: "The court erred in not granting appellant's motion to dismiss."

In the trial court the basis for his motion to dismiss (made when the state rested) was that the state had presented no evidence that appellant had broken into the Harmony Apparel Shop "with an intent to commit a crime there."

In order to understand the legal problem presented, it is necessary to describe the physical arrangement of the apparel shop and Saladay Standard Drugstore which occupy adjoining space in the same store building and also to have in mind the substance of the state's evidence relating to appellant's activities with respect thereto.

In his brief appellant states the substance of the state's evidence as follows:

> The facts as presented by the respondent were as follows: On January 23, 1967, Robert Bishop, a pharmacist, was working the night shift at Saladay Standard Drugs located at No. 1 Boston, at the intersection of Boston and Queen Anne Avenue in the City of Seattle. At about 10:55 p.m. that evening, sometime after the drug store had closed for business Mr. Bishop heard loud noises in the back of the store. As far as he could determine, it was a man and a woman. Those noises ceased and Mr. Bishop then heard rapping noises and men's voices from the same direction. He quickly called the police. Officer Robert E. Fitch was among the officers who answered the call. Officer Fitch positioned himself inside the drug store and he too heard rapping and saw plaster dust falling from the wall. Shortly thereafter, a hole was poked through the wall by someone on the other side. The officer saw the appellant poke his head through this hole, withdraw it, and disappear.

> The wall to the drug store had been broken through from the lavatory of the Harmony Apparel Shop at No. 3 Boston, a separate leased premises in the same building.

> Sgt. Robert Ammerman of the Seattle police also had answered this call and was waiting outside the building. He heard the noises inside and then observed appellant

coming from the building. He placed appellant under arrest and whereupon appellant stated "Don't shoot. You won't have any need for that. I just had to get some narcotics."

The state accepts the foregoing statement as being correct except for the following additions:

The evidence disclosed that the door to the Harmony Apparel Shop had been broken into; that neither the defendant nor the individual charged with him had permission to enter the Harmony Apparel Shop; and that the wall separating the drug store from the apparel shop was broken through.

State's exhibit 1 is a map which shows the portions of the building occupied by the apparel shop and the drugstore, respectively. There is no door or other means of going from one store to the other without going out of the building.

Appellant's argument in the trial court and in this court is that the charge against him should have been dismissed because there was no evidence that, assuming that he broke into the apparel shop, he intended to commit a crime therein. He contended that the only evidence presented by the state in this respect tended to show that he broke into the apparel shop with intent to commit a crime in the drugstore, to wit, steal narcotics.

RCW 9.19.020 defines the crime of burglary in the second degree as follows:

Second degree. Every person who, with intent to commit some crime therein shall, under circumstances not amounting to burglary in the first degree, enter the dwelling house of another or break and enter, or, having committed a crime therein, shall break out of, any building or part thereof, or a room or other structure wherein any property is kept for use, sale or deposit, shall be guilty of burglary in the second degree and shall be punished by imprisonment in the state penitentiary for not more than fifteen years.

The state having presented evidence tending to show that appellant had broken into and entered the apparel shop, the burden was upon appellant to produce evidence

which convinced the jury that his entry was not made with intent to commit a crime therein. This burden is cast upon him by RCW 9.19.030 which reads as follows:

> Presumption of intent. Every person who shall unlawfully break and enter or unlawfully enter any building or structure enumerated in RCW 9.19.010 and 9.19.020 shall be deemed to have broken and entered or entered the same with intent to commit a crime therein, unless such unlawful breaking and entering or unlawful entry shall be explained by testimony satisfactory to the jury to have been made without criminal intent.

The first matter to be considered is the state's contention that by failing to stand on his motion to dismiss made and denied when the state rested its case at the trial and by thereafter testifying in his own behalf, appellant waived his motion to dismiss.

The state in support of its position cites the recent case of *State v. Mudge*, 69 Wn.2d 861, 862, 420 P.2d 863 (1966) in which this court stated the applicable rule[1] as follows:

> At the conclusion of the state's case, the defendant took the stand and testified in his own behalf. This court has held that a motion to dismiss at the end of the state's case is waived when the defendant offers evidence in his own behalf.

In his reply brief appellant argues that he did not waive his motion to dismiss by testifying in his own defense. In support of his position he relies upon *State v. Brown*, 178 Wash. 588, 35 P.2d 99 (1934) in which this court recognized the existence of the rule but held that it did not

---

[1] Other recent decisions bearing on this problem are *Seattle v. Ruffin ante* p. 16, 442 P.2d 619 (1968); *State v. Nelson,* 63 Wn.2d 188, 386 P.2d 142 (1963); *State v. Brubaker,* 62 Wn.2d 964, 385 P.2d 318 (1963); *State v. Goldstein,* 58 Wn.2d 155, 361 P.2d 639 (1961); *State v. Thomas,* 52 Wn.2d 255, 324 P.2d 821 (1958); *State v. Bates,* 52 Wn.2d 207, 324 P.2d 810 (1958); *State v. Emerson,* 43 Wn.2d 5, 259 P.2d 406 (1953); *State v. Emmanuel,* 42 Wn.2d 799, 259 P.2d 845 (1953); *State v. Dildine,* 41 Wn.2d 614, 250 P.2d 951 (1952). *See also* P. Trautman, *Motions Testing The Sufficiency Of Evidence,* 42 Wash. L. Rev. 787, 795 (1967), which indicates that *State v. Mudge,* 69 Wn.2d 861, 862, 420 P.2d 863 (1966) correctly states the present rule.

apply where the evidence produced by the defendant had no bearing on the merits of the case.[2]

Appellant contends that his own testimony had no bearing on the merits of the case, and, therefore, the rule referred to in the above-cited case is not applicable to this case. We do not agree.

He testified that he had been drinking at various taverns and bars since about 6 or 7 a.m. on January 23. Late that night he telephoned his ex-wife and asked her to come and get him. She said: "No, take the bus." Appellant then testified on direct examination:

> So, I left the phone booth and I was waiting for the bus, leaning up against the Harmony Apparel Shop, and I stood there for a while and the bus never comes at that time of night. I don't know why. I waited and waited. Eventually I saw a police car pull up. I figured somebody called the police and they will pinch me for being drunk.
>
> The door at that time was open and I slipped inside and sat down and waited. I heard some people making noise. I didn't go back there. I didn't want to get pinched.
>
> I set there and I don't know if I fell asleep, but eventually I woke up and there is a policeman with a gun. I walk down there and I said, "I give up. Don't be shooting me."
>
> He put my hands up and shook me down and brought us down to the police station. That's the extent of it, I guess.
>
> Q. Did you go inside of the Harmony Store there with the intent to commit any crime therein? A. Just to get away from the police.

On cross-examination appellant stated that after the telephone call to his ex-wife he was waiting for the bus. He wasn't certain which bus (the police officers testified that they arrived at the location about 11:30 p.m.). He went into the front of the apparel shop. He heard noises that sounded like a banging in the rear of the store but he did not want to go back and cause any trouble. He was positive that he

---

[2]See also State v. Emerson, 43 Wn.2d 5, 259 P.2d 406 (1953) dissenting opinion.

did not go to the back of the store. He then testified as follows:

Q. Did this cause you to be suspicious at all? A. No. In my condition I couldn't have been suspicious at all of anything. Q. You were quite inebriated? A. Yes. I have been drunk for seven years. I can't see how in the world they can say I am sober that night. I can't sober up for one night.

Appellant was never asked about the little red Scotch plaid bag which was admitted in evidence as exhibit 5 (and a photograph thereof as exhibit 6). The police officers testified that this bag was found against the wall in the lavatory area in the apparel shop. It contained a flashlight (which was turned on), gauze bandages, an inch-wide pry bar, tape, a hatchet, sneakers, vice grips, some keys and a can of Right Guard. These two exhibits were available to the jury in their deliberations. They were also available to the trial court in drawing proper inferences (unfavorable to the moving party) in passing on the motion to dismiss made by appellant when the state first rested.

■ We have referred to the evidence in some detail because appellant's sole claim of error (to wit, that the trial court erred in denying his motion to dismiss made at the close of the state's case and not renewed thereafter) is based on an exception to the general rule that such a motion was waived by his subsequent introduction of evidence. This exception is recognized where the evidence introduced has no bearing on the merits of the cause.

It is quite apparent that appellant's testimony in this case did have a bearing on the merits of the cause in several material respects. Therefore, *the exception* to the general rule of waiver does not apply to this case. The general rule of waiver which has been applied in 10 of our decisions cited (*supra*) is applicable here and thus we are precluded

from passing[3] upon appellant's assignment of error because it has been waived.

The judgment and sentence is hereby affirmed.

FINLEY, C. J., HILL, HAMILTON, and NEILL, JJ., concur.

---

November 15, 1968. Petition for rehearing denied.

---

[3]Even if we were able to pass upon the assignment of error the result would be the same. The state had made a prima facie case of breaking and entering, and this, when coupled with the statutory presumption supplied by RCW 9.19.030 was sufficient to warrant the denial of appellant's challenge to the sufficiency of the evidence.