[No. 13806-2-III.   Division Three.   June 4, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. EDELMIRA
G. CASTELLANOS, *Appellant*.

*George P. Trejo, Jr.*, for appellant.

*Richard L. Weber, Prosecuting Attorney*, and *Carol L. Case, Deputy*, for respondent.

SWEENEY, C.J. — ██ ██ A jury may have access to an audio tape exhibit during deliberations if, in the discretion of the court, the exhibit bears directly on the charge and is not unduly prejudicial. *State v. Frazier*, 99 Wn.2d 180, 189, 661 P.2d 126 (1983). Edelmira G. Castellanos was convicted of two counts of delivery of a controlled substance, marijuana. The court allowed the jury unrestricted access to an informant's body wire tapes and a playback machine during deliberations. Ms. Castellanos appeals contending that the court erred in permitting the jury unlimited access to the tapes. She also argues the trial court erred in not granting a new trial because the State failed to provide her with statements her son made to police following his arrest on an unrelated juvenile offense. We conclude that the trial court did not abuse its discretion by providing the jury with unlimited access to the body wire tapes and that the State had no duty to disclose her son's earlier statements. We affirm.

On February 5, 1993, Detective Jan Lewis gave an informant $280 to buy marijuana from Roberto Barrera, Ms. Castellanos's 16–year–old son. The informant called Mr. Barrera and arranged to buy the marijuana at an Oroville service station. Mr. Barrera drove to the service station. Ms. Castellanos was a passenger in his vehicle. Mr. Barrera parked behind the station, out of the detective's view. Equipped with a body wire, the informant met with Mr. Barrera. Detective Lewis recorded their conversation. Within a few minutes, Mr. Barrera and Ms. Castellanos drove away. The informant gave Detective Lewis a bag of marijuana and $10 in unspent buy money.

On February 9, Detective Michael Slattery used the same informant for another controlled drug buy from Mr. Barrera. The informant, again equipped with a body wire, was given $260. He walked to the service station and called Mr. Barrera, who arrived shortly thereafter. Ms. Castellanos was again a passenger in the vehicle. Detective Slattery could not see the purchase. After Mr. Barrera left, the informant gave Detective Slattery a bag of marijuana and $10 in unspent buy money.

At trial, Mr. Barrera testified that when he and Ms. Castellanos arrived at the service station, he told her he was going to buy food. He said that on both occasions, she waited in the car while he and the informant made the drug sale in the service station.

The informant disagreed. He testified that both sales occurred in the back seat of Mr. Barrera's car. He said he handed the money to Mr. Barrera who gave it to Ms. Castellanos. She in turn handed Mr. Barrera a bag of marijuana. He then handed the bag to the informant. Ms. Castellanos testified she went with her son to the service station so he could play video games and get popcorn. She denied giving marijuana to the informant. During the informant's testimony, the State played portions of the body wire tapes for the jury.

The court, over objection, provided the jury with the body wire tapes and a playback machine during deliberations. Ms. Castellanos was convicted of two counts of delivery of a controlled substance.

Ms. Castellanos first contends that the court erred in failing to supervise the jury's use of the informant's tapes. She argues that because the jury had unrestricted access there was a danger that it placed undue emphasis on the tapes. She relies on *State v. Ross*, 42 Wn. App. 806, 714 P.2d 703 (1986). There, a shooting victim was subpoenaed but neither appeared nor testified at trial. The court instead admitted a 911 tape and allowed the tape to be taken to the jury room without restriction. On the tape, the victim identified the defendant as the person who fired three shots into her home. Division One of this court held that it was an abuse of discretion "to surrender control of the use of the recording to the jury." *Id.* at 812.

Like other relevant evidence, audio tapes are admissible at the discretion of the trial court. *Frazier*, 99 Wn.2d at 188; *State v. Clapp*, 67 Wn. App. 263, 272, 834 P.2d 1101 (1992), *review denied*, 121 Wn.2d 1020 (1993). Such exhibits, of course, must bear directly on the charge and must not be unduly prejudicial. *Frazier*, 99 Wn.2d at 189.

The same objection made here by Ms. Castellanos was made in *Frazier*. There, the court provided the jury with both an incriminating recorded statement of a codefendant and a transcript of the statement. Our Supreme Court noted that the rule in Washington is that "a tape recorded statement of the defendant and a properly authenticated transcript thereof may, within the sound discretion of the trial court, be admitted as exhibits and reviewed by the jury during its deliberations." *Id.* at 188. The Court rejected the invitation to change the rule in Washington, holding that "[t]he majority and better reasoned rule permits such exhibits to go to the jury if, in the sound discretion of the trial court, the exhibits are found to bear directly on the charge and are not unduly prejudicial." *Id.* at 189. Likewise, in *State v. Forrester*, 21 Wn. App. 855, 587 P.2d 179 (1978), *review denied*, 92 Wn.2d 1006 (1979), we held that admission of a tape and a transcript was within the sound discretion of the trial court. *Id.* at 865.

Turning again to *Ross*, the primary concern of the court there appeared to be that the defendant was denied his Sixth Amendment right to confrontation because the State had not made a sufficient effort to secure the presence of the shooting victim. *Ross*, 42 Wn. App. at 811–13. But to the extent that *Ross* stands for the proposition that a trial judge abuses his or her discretion by giving a jury unrestricted access to a tape, we disagree.

Whether a jury can read a transcript, as in *Forrester*, or listen to a tape, as in *Frazier*, the emphasis to be given such evidence should be a jury's decision. A jury has unlimited access to many exhibits. CrR 6.15(e) (jury shall take into deliberation room all exhibits received in evidence). And, the trial court surrenders control over the exhibits during deliberations. *See State v. Lord*, 117 Wn.2d 829, 855, 822 P.2d 177 (1991) (summary charts), *cert. denied*, 506 U.S. 856 (1992); *State v. Wilson*, 74 Wn.2d 243, 248, 444 P.2d 141 (1968) (bag containing flashlight, pry bar, hatchet, and keys available to jury during delibera-

208

tions of defendant's burglary charge), *cert. denied*, 395 U.S. 903 (1969); *State ex rel. Taylor v. Reay*, 61 Wn. App. 141, 145, 810 P.2d 512 (polygraph results), *review denied*, 117 Wn.2d 1012 (1991); *Forrester*, 21 Wn. App. at 865 (gruesome photographs). The evidence here was probative of Ms. Castellanos's guilt. The trial court did not abuse its discretion.

Ms. Castellanos next contends the State failed to produce potentially exculpatory evidence. She asserts the State did not produce statements made by Mr. Barrera when he was charged in juvenile court for an unrelated offense. *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

A prosecutor has a duty to disclose material evidence that is favorable to the defendant. *State v. Blackwell*, 120 Wn.2d 822, 826, 845 P.2d 1017 (1993). Failure to do so violates the defendant's right to a fair trial. *Id.* at 826. "The mere possibility that an item of undisclosed evidence might have helped the defense or might have affected the outcome of the trial . . . does not establish 'materiality' in the constitutional sense." *State v. Mak*, 105 Wn.2d 692, 704–05, 718 P.2d 407, *cert. denied*, 479 U.S. 995 (1986) (emphasis omitted).

When Mr. Barrera was arrested for the unrelated offense, his statements to police indicated that Ms. Castellanos and his father had told him that he was old enough to determine whether he wanted to deal drugs. He also indicated that half of the proceeds from his drug dealings go to his mother and father. Exculpatory information tends to clear a person of fault or guilt. Mr. Barrera's statements are not exculpatory evidence. The State had no duty to disclose this information.

The convictions are affirmed.

THOMPSON and SCHULTHEIS, JJ., concur.

Review granted at 130 Wn.2d 1008 (1996).