**Alvin L. GILCRIST, Petitioner,**

v.

**Lawrence KINCHELOE, Respondent.**

**No. C–83–285–JLQ.**

United States District Court,
E.D. Washington.

June 1, 1984.

Alvin L. Gilcrist, pro se.

Michael Madden, Asst. Atty. Gen., Olympia, Wash., for respondent.

## ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE

QUACKENBUSH, District Judge.

IN THIS action petitioner seeks habeas relief from a 1978 conviction for escape and a subsequent determination of habitual criminal status. Petitioner challenges the escape conviction on the ground that the trial court unconstitutionally placed the burden on him to prove his involuntary intoxication rather than requiring the state to prove its absence. Petitioner also attacks the habitual criminal determination as being constitutionally infirm because he was not provided a jury trial in that proceeding as required by the sixth amendment and the due process clause. The parties have filed cross-motions for summary judgment.

### FACTS

The escape at issue occurred in November, 1974. Mr. Gilcrist was convicted of that offense in Snohomish Superior Court on June 11, 1975. In supplemental proceedings at a bench trial, petitioner was found to be an habitual criminal. The escape conviction, however, was overturned based upon the appellate court's ruling that petitioner was entitled to an involuntary intoxication instruction. *State v. Gilcrist,* 15 Wash.App. 892, 552 P.2d 690 (1976).

Petitioner was retried in 1978. At the new trial the court gave the following involuntary intoxication instruction:

Intoxication resulting from drugs medicinally administered is considered as involuntary. Involuntary intoxication is a defense to the crime of escape if the mind of the accused was affected to such an extent that he was unable to perceive the nature and quality of the acts with which he is charged or, if he did know it, he was unable to tell right from wrong with reference to the acts charged.

The defense of involuntary intoxication must be established by a preponderance of the evidence. Preponderance of the

evidence means that you must be persuaded, considering all the evidence in the case, that it is more probably true than not that the accused was involuntarily intoxicated to such an extent that he was unable to perceive the nature and quality of the acts or, if he did know it, he was unable to tell right from wrong.

The petitioner was again found guilty of escape.

The state then filed a supplemental information charging Mr. Gilcrist as an habitual criminal. The trial court adjudged Mr. Gilcrist an habitual criminal based upon the findings made during the supplemental proceedings following his first escape trial and also upon the fact that Gilcrist had been adjudged an habitual criminal by a jury following a conviction for first-degree assault in 1977.[1] On appeal, the State Court of Appeals affirmed the escape conviction and found it unnecessary to address the 1978 habitual criminal conviction because the valid 1977 habitual criminal determination made the later one "meaningless". *State v. Gilcrist*, 25 Wash.App. 327, 329, 606 P.2d 716 (1980).

## DISCUSSION

### A. ESCAPE CONVICTION: INVOLUNTARY INTOXICATION

As quoted above, at petitioner's new trial on the escape charge the court placed the burden on him to prove his involuntary intoxication by a preponderance of the evidence. Mr. Gilcrist argues that the state should have been required to prove that he was *not* intoxicated rather than placing the

burden on him to show he was. This argument is based on the principle that due process requires the state to prove all the essential elements of the crime charged. According to petitioner, involuntary intoxication negates the essential elements of "unlawfulness" and "mental culpability".[2] Thus, he argues due process mandates that the state must prove the absence of intoxication in order to meet its burden of showing the presence of "unlawfulness" and "mental culpability".

At first glance, petitioner's argument has a glimmer of viability. In *In re Winship* the Supreme Court held that "the Due Process Clause protects the accused against conviction except beyond a reasonable doubt of every fact necessary to constitute the crime." 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). Five years later in applying its holding in *Winship*, the Court ruled that when malice aforethought is an element of the crime charged, the due process clause requires the prosecution—not the defendant—to prove beyond a reasonable doubt the absence of heat of passion since heat of passion negates malice aforethought. *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

Two years later the Court entered an opinion which, at the very least, substantially narrowed *Mullaney*. In *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) the Court rebuffed a constitutional attack on a state statute that required the defendant to shoulder the burden of proving the affirmative defense of extreme emotional disturbance. The *Pat-*

---

**1.** That conviction and the habitual criminal determination were affirmed in *State v. Gilcrist*, 91 Wash.2d 603, 590 P.2d 809 (1979), but were on appeal when the trial court relied upon the findings entered therein.

**2.** At the 1978 retrial of the escape charge, the trial court gave the following instruction:

Instruction No. 4: To convict the defendant of the crime of Escape, as charged, the following elements must be proven:

1. That on or about November 11, 1974, the defendant, Alvin L. Gilcrist, unlawfully and feloniously did escape from officers of the Snohomish County Sheriff's Office;

2. That the said defendant was at the time in lawful custody, held on a conviction or sentence for robbery, a felony;

3. That said act occurred in Snohomish County, Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

*terson* defendant was charged with the crime of second degree murder, the factual elements of which were the death, the intent to kill and causation. According to the Court, the existence of extreme emotional disturbance did not negate the intent element but merely demonstrated that the defendant's actions were caused by a mental infirmity, thereby decreasing his criminal culpability. *Id.* at 206–207, 97 S.Ct. at 2324–325. Thus, the affirmative defense "[did] not serve to negate any facts of the crime which the State [was] to prove in order to convict. It [constituted] a separate issue on which the defendant was required to carry the burden of persuasion." [3] *Id.* at 207, 97 S.Ct. at 2325.

■ Similarly, in confirming the rule that a state may validly require a criminal defendant to prove insanity, the Court has said that insanity does not typically negate any facts of the crime charged.[4] *Id.* at 207, 97 S.Ct. at 2325 (*citing, Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952)). The explanation for this holding is that insanity entitles a defendant to an acquittal not because it establishes innocence (*i.e.*, state has failed to prove element of criminal intent) but because the state declines to convict or punish one shown to have committed the crime while mentally impaired. *Perkins & Boyce, Criminal Law*, Chpt. 2, at 80 (1982). In the words of Justice Brennan: "The insanity defense has traditionally been viewed as premised on the notion that society has no interest in punishing insanity acquittees, because they are [not] blame-worthy . . .".[5] *Jones v. U.S.*, — U.S. —, 103 S.Ct. 3043, 3054 n. 4, 77 L.Ed.2d 694 (1983). (Brennan, J., dissenting). In other words, the mental state of "insanity" does not go to the elements of the crime but merely the ultimate culpability of the accused.

■ Like insanity, involuntary intoxication diminishes the culpability of a crime. The defendant is said to be excused from the criminality of the act because intoxication affects the ability to distinguish between right and wrong. For this reason courts generally characterize involuntary intoxication as a temporary degree of insanity. *W. Lafave & A. Scott, Handbook on Criminal Law*, § 45 at 342 (1972); *Perkins & Boyce, Criminal Law*, p. 1005 (1982); *see, Model Penal Code*, § 2.08. Indeed, in the State of Washington involuntary intoxication is equivalent to insanity and will operate as a defense provided the defendant is found to have been unable to tell right from wrong. *State v. Mriglot*, 88 Wash.2d 573, 576–577, 564 P.2d 784 (1977). That standard is exactly what was included in the court's jury instruction at issue here. In light of the rule that the defendant may be required to bear the burden of proof with respect to insanity where as here soundness of mind is not an *express* element of the crime, *Patterson v. New York, supra* at 2322–2325 (reaffirming *Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952)), this court concludes that the instruction as given by the state trial court did not violate petitioner's federal constitutional right to due process of law.[6]

---

**3.** *Winship, Mullaney,* and *Patterson* have been the source of a large body of scholarly commentary and judicial interpretation. *See e.g., United States ex rel. Goddard v. Vaughn*, 614 F.2d 929, 933 n. 4 (3rd Cir.1980). At least one treatise argues that *Patterson* is so inconsistent with *Mullaney* the latter should be deemed overruled. *McCormick on Evidence* § 341 (2d Ed.E. Cleary Supp.1978).

**4.** *Leland* held that an Oregon statute requiring a defendant to prove his insanity beyond a reasonable doubt was constitutional. The holding in *Leland* unquestionably is still the law. *Rivera v. Delaware*, 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed.2d 160 (1976) (challenge to *Leland* dis-missed for want of substantial federal question); *Engle v. Isaac*, 456 U.S. 107; 122 n. 23, 102 S.Ct. 1558, 1568, n. 23, 71 L.Ed.2d 783 (1982) (*citing Leland v. Oregon* in approval).

**5.** Justice Brennan also pointed out that the insanity defense is not unrelated to the mental element of a crime: "[I]nsanity and *mens rea* stand in a close relationship, which this Court has never fully plumbed. *Jones v. U.S.*, 103 S.Ct. 3043, 3054 n. 4 (1983) (Brennan, J. dissenting).

**6.** An apparent connection between a condition recognized as a defense (involuntary intoxication) and the elements of a crime does not

## B. HABITUAL CRIMINAL PROCEEDING: RIGHT TO JURY TRIAL

■ As stated earlier, upon the conclusion of petitioner's retrial and conviction on the escape charge, the county prosecutor filed a supplemental information charging Gilcrist as an habitual criminal.[7] The judge denied petitioner a jury trial on that charge and instead relied on the findings and conclusions made in the supplemental habitual criminal proceedings following his first trial on the escape charge, and also upon the 1977 proceedings in which Mr. Gilcrist was found to be an habitual criminal. Petitioner challenges that denial of a jury trial on due process and sixth amendment grounds.

### 1. *Sixth Amendment:*

■ The habitual criminal statute creates a status, not a separate offense. *State v. Eaton,* 24 Wash.App. 143, 600 P.2d 632 (1979). The statute does not create a crime; it merely prescribes punishment—it is part of the punishment phase of a criminal proceeding. *State v. Greene,* 75 Wash.2d 519, 451 P.2d 926 (1969). There is no sixth amendment right to have a jury fix one's punishment. *United States v. Bowdoch,* 561 F.2d 1160, 1176 (5th Cir. 1977); *United States v. Neary,* 552 F.2d 1184, *cert. den.* 434 U.S. 864, 98 S.Ct. 197, 54 L.Ed.2d 139 (1977); *cf., Hicks v. Oklahoma,* 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980). Consequently, the claim here is without merit.

### 2. *Due Process:*

■ The Supreme Court of the State of Washington has held that under this state's constitution an individual charged as being an habitual criminal is entitled to a jury trial. *State v. Furth,* 5 Wash.2d 1, 19, 104 P.2d 925 (1940); *State v. Starrish,* 86 Wash.2d 200, 203, 544 P.2d 1 (1975); *State v. Domanski,* 5 Wash.2d 686, 106 P.2d 591 (1940). The denial of such a state-created right to a jury trial in an habitual criminal proceeding is a deprivation of due process under the United States Constitution. *Hicks v. Oklahoma,* 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980).

In this case, petitioner waived his jury trial right at the habitual criminal proceeding following his 1975 escape conviction. (Ct.Rec. 3, Ex. A $1). It is undisputed that no such waiver occurred at the habitual criminal proceeding following the 1978 escape conviction. The question then is whether under state law petitioner was entitled to a jury trial at the 1978 habitual criminal proceeding. If not, then his federal due process rights have not been violated. *See, Hicks v. Oklahoma,* 477 U.S. at 346, 100 S.Ct. at 2229.

■ At the 1978 habitual criminal proceeding the trial court concluded that state law did not mandate a jury trial under the circumstances presented. The basis for that conclusion was that the only factual issues to be determined—two prior convictions and the defendant's identity—had already been established, first at the 1975 proceeding and later at the 1977 proceeding following Gilcrist's assault conviction. The

---

compel the conclusion that absence of that condition is itself an element of the offense. *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). This is particularly true when, as here, the crime is a so-called "general intent" crime. *State v. Gilcrist,* 25 Wash.App. 327, 328, 606 P.2d 716 (1980) ("escape as defined in R.C.W. 9.31.010 is a general intent crime").

**7.** R.C.W. 9.92.090

Every person convicted in this state of any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who shall previously have been twice convicted, whether in this state or elsewhere, of any crime which under the laws of this state would amount to a felony, or who shall previously have been four times convicted, whether in this state or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to defraud is an element, shall be punished by imprisonment in the state penitentiary for life.

The burden is on the state to prove each element of an habitual criminal status beyond a reasonable doubt. To establish status as an habitual criminal, the elements the state must prove are (1) prior judgments of conviction and (2) that person named therein is the same person on trial. *State v. Hennings,* 100 Wash.2d 379, 670 P.2d 256 (1983).

trial judge's ruling was affirmed on appeal. *State v. Gilcrist*, 25 Wash.App. 327, 239, 606 P.2d 716 (1980). Subsequently, Washington courts have rejected Gilcrist's attack on this holding on two occasions: The Court of Appeals dismissed his Personal Restraint Petition, *In Re Gilcrist*, No. 11007–1–I, and the Washington State Supreme Court denied discretionary review of that dismissal. Supreme Court Motion Docket, Vol. 14 at p. 654. Apparently then, the state courts have determined that under state law Mr. Gilcrist was not entitled to a jury trial at his 1978 habitual criminal proceeding. Since "state courts are the ultimate expositors of state law ... and ... we are bound by their constructions", petitioner cannot be said to have been denied a right which the state courts have ruled did not exist. *Mullaney v. Wilbur*, 421 U.S. at 691, 95 S.Ct. at 1886; *Bronstein v. Wainwright*, 646 F.2d 1048, 1050 (9th Cir.1981). Accordingly, Mr. Gilcrist has not been deprived of any federal due process right. *See, Hicks v. Oklahoma*, 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980).

Petitioner has failed to show a "violation of the Constitution or laws of the United States", 28 U.S.C. § 2254, and his Motion for Summary Judgment must be DENIED. Respondent's Motion for Summary Judgment is GRANTED. Judgment shall be entered in favor of respondent denying Mr. Gilcrist's petition and dismissing this action with prejudice.

IT IS SO ORDERED. The Clerk is directed to enter this Order and forward copies to petitioner and counsel for respondent.